UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWMET AEROSPACE INC.,

      Plaintiff,

                                      Case No. 1:22-cv-713

v.

                                      Hon. Hala Y. Jarbou

JOHN CORRIGAN, et al.,

      Defendants.

_____/

## OPINION

Plaintiff Howmet Aerospace, Inc. brings this action seeking a declaration that Plaintiff fulfilled its obligations to Defendants under an employee benefits plan formed by Plaintiff's predecessor. Two motions are before the Court. First, Plaintiff filed a motion to stay arbitration (ECF No. 6). Second, Defendants John Corrigan, Nicholas Lirones, and Estate of Ronald Ward filed a motion to compel arbitration and stay or dismiss the case (ECF No. 9). The Court will grant Plaintiff's motion and deny Defendants' motion.

## I.      BACKGROUND

This case concerns a dispute over the parties' rights and obligations under a nonqualified deferred compensation plan[1] that Pechiney Corporation formed in 1986. (Compl. ¶ 1, ECF No. 1.) The plan was intended to aid Pechiney in retaining and attracting exceptional employees. (Deferred Comp. Plan, ECF No. 9-2, PageID.91.) This plan offered select Pechiney employees the opportunity to defer the payment of a portion of their compensation until retirement. (*Id.*,

---

[1] Nonqualified deferred compensation plans are often offered only to select employees whereby the employees have the option to designate amounts of their compensation to receive later. Like the plan in this case, nonqualified deferred compensation plans are generally governed by the Employee Retirement Income Security Act (ERISA). *See, e.g.*, *Wilson v. Safelite Group, Inc*., 930 F.3d 429 (6th Cir. 2019). Though governed by ERISA, these plans are exempt from ERISA's vesting and participation requirements. 29 U.S.C. § 1051(2); *see also Simpson v. Mead Corp.*, 187 F. App'x 481, 484 (6th Cir. 2006).

PageID.93.)  Only a few managerial employees were permitted to participate in the plan.  (*Id.*)

Upon a participating employee's retirement, Pechiney would distribute annual payments to the

employee based on the amount he or she deferred.  (*Id.*, PageID.95.)

Defendants are former executives who were eligible to participate in, and did participate

in, the plan. (Compl. ¶ 10.)  Two Defendants, John Corrigan and Nicholas Lirones, are still alive.

(*Id.* ¶¶ 3-4.)  One Defendant, Ron Ward, passed away in April 2022, and is represented by his

estate.  (*Id.* ¶ 5.)  Plaintiff is a successor of Pechiney Corporation.  (*Id.* ¶¶ 11-12.)  A series of

transactions led to Plaintiff assuming responsibility for the employer rights and obligations under

the plan.  (*Id.*)

On July 28, 2020, Plaintiff elected to terminate the plan under the plan's termination

provision.  (Compl. ¶ 17.)  After such termination, Plaintiff paid Defendants the balances of the

deferred compensation to which they were entitled.  (*Id.* ¶ 18.)  Defendants then claimed that not

only were they entitled to deferred compensation after termination, but that their beneficiaries were

also entitled to a gratuity upon their death.  (*Id.* ¶ 20.)  In response, Plaintiff filed this action seeking

a declaration that Plaintiff properly discharged its obligations when it terminated the plan and paid

Defendants.  (*Id.* ¶¶ 25-30.)  Defendants then served Plaintiff a notice of intent to arbitrate under

New York's Civil Practice Law & Rules.  (Notice of Intent to Arb., ECF. No. 7-1, PageID.47.)

Defendants based their intention on the arbitration provision, Section 11.5 of the plan.  (*Id.*)

Two motions followed the notice of intent to arbitrate.  First, Plaintiff filed a motion to stay

the potential arbitration.  (ECF No. 6.)  Second, after Plaintiff filed its motion to stay the potential

arbitration, Defendants moved to compel arbitration and stay or dismiss this action under the

Federal Arbitration Act (FAA).  (ECF No. 9.)

## II.      STANDARD

Under the FAA, courts need not conduct hearings on motions to compel arbitration unless the parties present a factual dispute. *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983).  Where, as here, a motion to compel arbitration strictly presents questions of law—the meaning of a contract—courts may rule on the motion without a hearing. *Id.*  When deciding a motion to stay proceedings and compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).  At bottom, the question of arbitrability is one of contract, and "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers*, 186 F.3d 733, 738 (6th Cir. 1999) (quoting *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

## III.      ANALYSIS

The parties do not dispute that the plan features an arbitration provision, so the first determination is not in dispute.  Because determinations three and four are only relevant if the pertinent claims are arbitrable under an agreement, the primary issue regarding the parties' motions is the scope of the arbitration provision.  The Court finds that this action is not arbitrable under the plan and thus the Court cannot compel arbitration.

### A.      Presumption of Arbitrability

When a court is determining the scope of an arbitration provision within an expired contract, the court must determine whether the presumption of arbitrability applies.  *S. Cent. Power*

3

*Co.*, 186 F.3d at 738-39.  Congress enacted the FAA in 1925 to curb "widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).  In doing so, Congress created a federal policy favoring arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Consistent with this policy, there is a presumption of arbitrability of claims that come before a court when the litigants' contract features an arbitration provision.  *Id.*  But this presumption applies to expired and terminated contracts only when the post-expiration arbitration "has its real source in the contract."  *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205 (1991).

The Sixth Circuit has two lines of cases for post-expiration arbitrability inquiries.  The first line encompasses cases in which the disputes are centered around contracts with arbitration provisions and survival clauses.  *See, e.g.*, *Huffman v. Hilltop Cos.*, 747 F.3d 391 (6th Cir. 2014).  In this line of cases, the presumption in favor of arbitrability applies to post-expiration matters unless the parties, expressly or by clear implication, indicated that they sought to exclude such matters from the scope of their arbitration provision.  *Id.* at 397-98.  The second line of cases concerns expired contracts that contain an arbitration clause but no survival clause.  *See, e.g.*, *S. Cent. Power Co.*, 186 F.3d at 738-40; *Stevens-Bratton v. TruGreen, Inc.*, 675 F. App'x 563 (6th Cir. 2017).  In this second line of cases, the presumption of arbitrability applies to post-expiration matters only when the dispute meets one of three conditions: (1) it involves facts and occurrences that mostly arose before expiration; (2) an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.  *Stevens-*

*Bratton*, 675 F. App'x at 567 (citing *Litton Fin. Printing Div.*, 501 U.S. at 205-06).[2]  A dispute that

meets one of these three conditions has its real source in the contract.  *Id.*

Because the deferred compensation plan at issue does not contain a survival clause, this

action falls under the second line of post-expiration arbitrability cases.  And, because Plaintiff has

shown that none of the three conditions are met, the presumption of arbitrability is inapplicable to

this action.

> **1.  Most of the material facts giving rise to this action did not arise before expiration of the contract.**

Unless most of "the material facts and occurrences" arise before expiration or termination

of a contract, a dispute does not have its real source in the contract under this condition.  *S. Cent.*

*Power Co.*, 186 F.3d at 740; *Stevens-Bratton*, 675 F. App'x at 568.  For instance, in *Stevens-*

*Bratton*, the Sixth Circuit examined a dispute in which the plaintiff alleged that the defendant

violated a federal act when the defendant sent the plaintiff a telemarketing call.  675 F. App'x at

567.  The parties in *Stevens-Bratton* entered into a service agreement that housed an arbitration

provision and a clause that allowed the defendant to send telemarketing calls to the plaintiff's

phone.  *Id.* at 565.  In addition to agreeing to these provisions, the plaintiff provided the defendant

with her phone number.  *Id.* at 569.  Shortly after, the plaintiff registered her phone number with

the National Do-Not-Call-Registry.  *Id.* at 566.  Several months later, the parties' agreement

expired, after which the defendant sent the plaintiff numerous telemarketing calls.  *Id.*  The plaintiff

requested that the defendant cease calling her.  *Id.*  The Sixth Circuit determined that despite two

of the material occurrences taking place before expiration—the plaintiff providing her phone

---

[2] While *South Central Power Co.* and other cases have dealt with collective bargaining agreements, "'their holdings are based upon principles applicable to arbitration agreements generally, and their application need not be limited to the collective bargaining context.'"  *Stevens-Bratton*, 675 F. App'x at 568 n.1 (quoting *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947 (6th Cir. 2006)).

number to the defendant and allowing the defendant to call her—the presumption of arbitrability could not be based on this condition. *Id.* at 569. The Sixth Circuit reasoned that because the telemarketing calls and the plaintiff's post-expiration denials of the defendant's purported right to call formed the "heart of the dispute," most of the material events occurred after the expiration of the parties' contract. *Id.*

Here, too, most of the material facts and events transpired after Plaintiff terminated the plan. As Plaintiff notes, it sent Defendants a check amounting to the balance in their compensation accounts, all of whom cashed these checks post-termination. (Corrigan Notice of Termination and Payout, ECF No. 1-2, PageID.20-21; Lirones Notice of Termination and Payout, ECF No. 1-3; PageID.23-24; Ward Notice of Termination and Payout, ECF No. 1-4, PageID.26-27.) And the one pertinent fact that arose before termination—Defendants' participation in the plan—was rendered immaterial post-expiration when Defendants cashed their checks, for they were no longer Participants under the plan. (Deferred Comp. Plan § 4.1, PageID.93 ("Once a person becomes a Participant, he remains a Participant until his Deferred Compensation Account balance is paid in full in accordance with the terms of the Plan or until his death, whichever occurs first.").) Indeed, Defendants concede that they are no longer Participants. (Defs.' Br. in Supp. Mot. to Stay or Dismiss Case and to Compel Arb., ECF No. 9, PageID.80 ("As defined by the Plan, none of the Defendants are 'Participants,' . . . .").)

Furthermore, the events that form the heart of this action occurred after Plaintiff elected to terminate the plan. Like *Stevens-Bratton*, where the denial of a purported right to call the plaintiff was at the heart of the dispute, Plaintiff's denial of Defendants' purported right to a death benefit is the heart of this dispute. This declaratory relief action is predicated on Plaintiff seeking a declaration that it does not owe Defendants' beneficiaries a death benefit. (Compl. ¶ 29.) Absent

6

Defendants' post-termination assertions that their beneficiaries are owed a death benefit and

Plaintiff's corresponding denial of such a right, there would be no dispute at all.  Accordingly,

because most of the pertinent facts arose after Plaintiff terminated the contract, the presumption of

arbitrability cannot be sustained under this condition.

>        **2.        The post-expiration denial of benefits did not infringe upon a vested or
>                    accrued right under the parties' agreement.**

The second condition where the presumption of arbitrability applies to post-expiration

matters is met only "where an action taken after expiration infringes a right that accrued or vested

under the agreement." *Litton Fin. Printing Div.*, 501 U.S. at 205-06.  To determine whether a right

vested or accrued under an agreement, courts use "'standard principles of contract interpretation.'"

*Stevens-Bratton*, 675 F. App'x at 569 (quoting *Cincinnati Typographical Union No. 3, Loc. 14519*

*v. Gannett Satellite Info. Network, Inc.*, 17 F.3d 906, 910 (6th Cir. 1994)).  But before the Court

can employ standard principles of contract interpretation, the Court must address which law

governs this interpretation.

Defendants argue that the interpretation of this plan is governed by New York law because

the plan includes a choice-of-law provision.  (Defs.' Br. in Opp'n to Pl.'s Mot. to Stay Arb., ECF

No. 11, PageID.120.)  Yet Defendants also acknowledge that the plan is a retirement plan governed

by ERISA.  (Defs.' Br. in Supp. Mot. to Stay or Dismiss Case and to Compel Arb., PageID.86.)

Even if the choice-of-law provision survived termination of the plan, it is suspect because it clashes

with principles articulated in cases involving plans governed by ERISA.

A well-established principle is that ERISA plans are governed by "federal common law

rules of contract interpretation." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)

(citing *Pitcher Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996)).  The Sixth Circuit

has not directly addressed whether this principle prevents parties from contracting to choose state

law as the governing law of an ERISA-governed plan.  But the Sixth Circuit has noted that other circuits do not permit parties to use choice-of-law provisions to govern the interpretation of an ERISA-governed plan.  *Masco Corp. v. Wojcik*, 795 F. App'x 424, 427 (6th Cir. 2019) (citing *Prudential Ins. Co. v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998); *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1154-55 (11th Cir. 2001) (Carnes, J., concurring in the result)).  And district courts within the Sixth Circuit have applied the rule that "'parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan.'"  *Sosinski v. Unum Life Ins.*, 15 F. Supp. 3d 723, 729 (E.D. Mich. 2014) (quoting *Prudential Ins. Co.*, 140 F.3d at 791); *see also Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 522-23 (S.D. Ohio 2011) (applying federal common law rules of contract interpretation despite the fact that the parties' agreement contained a choice-of-law provision).  Accordingly, the Court will apply federal common law rules of contract interpretation.

Under the federal common law, an ERISA plan must be interpreted "according to [its] plain meaning, in an ordinary and popular sense."  *Perez*, 150 F.3d at 556.  Courts may not rewrite an ERISA agreement by adding or subtracting terms.  *Id.* at 557.  In developing the federal common law rules of contract interpretation, courts look to "both state law and general contract law principles."  *Id.* at 556.  And, aside from cases, general contract law principles are regularly extracted from treatises and other legal literature.  *See*, *e.g.*, *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (consulting 1 W. Story, *Law of Contracts*, (M. Bigelow ed., 5th ed. 1874), and Richard A. Lord, 11 *Williston on Contracts*, (4th ed. 2008), to determine what ordinary contract principles are when construing ERISA plans); *Nat'l Elec. Annuity Plan v. Henkels & McCoy, Inc.*, 846 F. App'x 332, 343 (6th Cir. 2021) (consulting 11 *Williston on Contracts*, to interpret an ERISA plan); *Nat'l Elec. Annuity Plan*, 846 F. App'x at 353 (Thapar, J., concurring)

(consulting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012)).

An employer's vesting of benefits that are exempt from ERISA's vesting requirements is "not to be inferred lightly; the intent to vest 'must be found in the plan documents and must be stated in clear and express language.'" *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (quoting *Wise v. El Paso Nat. Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993)).  No such clear and express language can be found in Plaintiff's plan.  Instead, the plan's language is brimming with clues that the payment-upon-death benefit could vest only if certain contingencies arose. Indeed, the plan's payment of a death benefit is contingent upon a Participant's death.  (Deferred Comp. Plan, § 7.3, PageID.96 ("Upon death of a Participant . . . a Participant's Beneficiary will receive a single lump sum payment.").)  But none of Defendants died while the plan was operative, so the death benefit did not vest.  Further, as indicated in Section 4.1 of the plan, once Defendants received and cashed the checks for the remaining balance, they were no longer Participants with a contingent death benefit.  (*Id.*, PageID.93 ("Once a person becomes a Participant, he remains a Participant until his Deferred Compensation Account balance is paid in full in accordance with the terms of the Plan or until his death, whichever occurs first.").)

Moreover, these clues are not confined to the payment-upon-death provision itself.  The plan also contains a narrow vesting provision:

> **5.4 Vesting of Deferred Compensation Account.**  A Participant shall always be 100% vested in the value of the Deferred Compensation Account, except as provided in Article VII.

(*Id.*, PageID.95.)  Noticeably absent from this provision is mention of the payment upon death benefit.  The maxim, *expressio unius est exclusio alterius*, is applicable here.  *See Smart v. Gillette Co. Long–Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995)) (applying the maxim to interpret an ERISA plan).  Where a legal text expressly includes an item in a provision, "any item not so

listed is thought to be excluded." *Caldwell*, 835 F. Supp. 2d at 523.  Here, Section 5.4 expressly

notes that a Participants' deferred compensation is vested. But neither Section 5.4 nor the rest of

the plan expressly mentions vested death benefits.   Therefore, there are no such benefits.

Accordingly, because the post-expiration denial of benefits did not infringe upon a vested right,

the presumption of arbitrability finds no support within this second condition.

> **3.     The disputed right does not survive the plan's termination under normal principles of contract.**

Finally, unless a disputed right survives the plan's termination under normal principles of

contract, a dispute does not have its real source in the contract under this third condition.  *Stevens-*

*Bratton*, 675 F. App'x at 570.  Under normal principles of contract, contracts must be construed

as a whole.  *Workman v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 2015).  When

construing a contract, the "'cardinal rule' . . . is to ascertain the parties' intent."  *Soltis v. J.C.*

*Penney Corp. Inc.*, 635 F. App'x 245, 248 (6th Cir. 2015) (citations omitted).  And the parties'

"intent is established solely based on the language of the contract" because no external evidence

"can better evince the intent of the parties than the writing itself."  *Id.*  In essence, "contracts must

be construed consistent with common sense and in a manner that avoids absurd results."  *Certified*

*Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 545 (6th Cir. 2007).

The language of the contract indicates that the parties did not intend for the payment upon

death benefit to survive termination of the plan.  The plan's payment upon death provision's text

is dispositive:

> **7.3 Payment Upon Death.**  Upon death of a Participant, either before or after Retirement, a Participant's Beneficiary will receive a single lump sum payment . . .  provided that no payment shall be made under this Section following an event giving rise to the payment of a Participant's Deferred Compensation Account current balance under . . . Section 9.2.

(Deferred Comp. Plan, PageID.96).    Section 9.2 states that the employer "may at any time

terminate the Plan" and "[u]pon the termination of the Plan . . . may discharge in full its obligations

to any Participant upon payment of the Participant's Deferred Compensation Account balance."

(*Id.*, PageID.97.)  Section 7.3's proviso, then, unambiguously indicates that the parties intended to

forgo payment of the death benefit if the responsible employer terminated the plan under Section

9.2.    Indeed, the "event giving rise to the payment a Participant's Deferred Compensation

Account" contemplated in Section 9.2 is the termination of the plan.   And the proviso's plain

language—that "no payment shall be made"—indicates that when such termination under Section

9.2 transpires, the payment upon death benefit becomes inoperative.  This provision, coupled with

the absence of a survival clause, confirms that the parties did not intend for the payment upon

death benefit to survive after the plan expired.   So, because the plan's language indicates that the

parties did not intend for the payment upon death benefit to survive termination of the plan, this

third condition does not save the presumption of arbitrability.  Thus, none of the three conditions

where the presumption of arbitrability is applicable post-agreement-expiration are met, so the

presumption of arbitrability did not survive Plaintiff's termination of the plan.

> **B.**   **The Plan's Arbitration Provision**

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed

so to submit." *S. Cent. Power Co.*, 186 F.3d at 738.  And "when an arbitration clause by its terms

extends only to a specific type of dispute, then a court cannot require arbitration on claims that are

not included."   *Simon v. Pfizer Inc.*, 398 F.3d 765, 775-76 (6th Cir. 2005).   Without the

presumption of arbitrability, the scope of the plan's arbitration provision is narrow, and this action

falls outside that scope.

Under the plan, for claims or disputes to be arbitrable, they must first go through an administrative process detailed in Article XI.  (Deferred Comp. Plan, PageID.99.)  Article XI limits the types of arbitrable claims or disputes:

> **11.1 Claim.**  Any person claiming a Benefit or requesting an interpretation or ruling under the Plan shall present this request in writing to the [Employer's Benefits] Committee, which shall respond in writing as soon as practicable.

(*Id.*)  Even if the arbitration provision had continued to apply after termination, Defendants do not argue that they submitted their death benefit claims or a request for an interpretation to Plaintiff's benefits committee.  Nor do Defendants contend that the claims made their way through the plan's administrative procedures.  Aside from relying on the inapplicable presumption of arbitrability, Defendants argue that Plaintiff is a "person" within the meaning of the plan and this declaratory action needed to first go through Article XI's claims procedures, including arbitration.  (Defs.' Br. in Opp'n to Pl.'s Mot. to Stay Arb., PageID.120-122.)  The Court disagrees.

In accordance with the plain text of the plan, Plaintiff is an "Employer"—not a "person"— meaning it was not required to submit the request for an interpretation to its own benefits committee.  While the plan does not define person, Employer is defined as "Pechiney Corporation, its Affiliates and any successor to the business."  (Deferred Comp. Plan, § 2.13, PageID.92.)  Because Plaintiff is Pechiney Corporation's successor, it is not disputed that Plaintiff is the Employer under the plan.  And the plan distinguishes between the "Employer" and "persons."  The arbitration provision makes this distinction when prescribing who must request arbitration after a person exhausts Article XI's procedures:

> **11.5 Arbitration.**  Any claim or dispute arising hereunder which is not resolved upon conclusion of the procedures heretofore provided in this Article XI shall, upon request of either the Employer or the claiming or requesting person, be decided by arbitration in the metropolitan area where the Participant is, or was most recently, employed by the Employer, in accordance with the Commercial Arbitration Rules then obtaining of the American Arbitration Association.  The Award rendered in

such arbitration shall be final, and judgment on such award may be entered in any court, state or federal, having jurisdiction thereover.

(*Id.*, PageID.99.)  Not only does the arbitration provision indicate that "Employer" and "person" are distinct, but it also indicates that the Employer and a "claiming or requesting person" are distinct.

Other provisions distinguish between natural persons and entities, further evidencing that Plaintiff—an entity—is not a "person" within the meaning of the plan.  For example, Section 8.1 states that "[e]ach Participant shall have the right, at any time, to designate any person, persons, or entity as his Beneficiary . . . ."  (Deferred Comp. Plan, PageID.96.)  Moreover, Section 2.2 states that "'Beneficiary' means the person, persons, or entity designated by the Participant . . . ."  (*Id.*, PageID.91.)  These provisions suggest that an entity is distinct from a person under the plan.  Thus, Plaintiff is not a person within the meaning of the plan.  Because Plaintiff is not a person under the plan, and Defendants—who are persons required to submit claims or requests to Plaintiff's benefits committee—did not exhaust the plan's administrative procedures, this declaratory relief action is not arbitrable.

## IV.    CONCLUSION

For the reasons stated, this action is not arbitrable.  Accordingly, this Court will deny Defendants' motion to compel arbitration.  Further, the Court will grant Plaintiff's motion to stay arbitration.  The Court will issue an order consistent with this Opinion.

Dated: December 13, 2022                          /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE

13